IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

TYLER NEASE, a minor,
DEVON NEASE, a minor,
DESIREE NEASE, a minor, by
and through MICHELLE TRICARICO,
as Parent and Next Friend, and
MICHELLE TRICARICO an
Individual,

      Plaintiffs,

vs.                                    CIV No. 01-0738 JHG/LCS

SHARON BERRY, Individually and in
Her Official Capacity; PAT JENNINGS,
Individually and In Her Official Capacity;
REBECCA BARERRA, Individually and In
Her Official Capacity, JOHN DOES A-Z, In
Their Individual Capacities, and CHAVES
COUNTY, NEW MEXICO,

      Defendants.

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on the following motions: (1) County Defendants' Motion to Dismiss, filed August 1, 2001, and fully briefed September 4, 2001; and (2) Defendant Rebecca Barerra and John Does H-Z's Motion to Dismiss Counts II, IV and V of Plaintiffs' Complaint, filed October 26, 2001, and fully briefed November 27, 2001. As grounds for their motion, Defendants Sharon Berry, Pat Jennings, John Does A-G and the County of Chaves (County Defendants) contend Plaintiffs' Complaint fails to state a claim upon which relief can be granted. Specifically, County Defendants contend (1) Plaintiffs fail to point to a policy or custom of Defendant Chaves County which violated their constitutional rights and (2) County Defendants

Berry, Jennings, and John Does A-G are entitled to qualified immunity.

Defendants Rebecca Barrera and John Does H-Z (CYF Defendants) move the Court to dismiss Plaintiffs' Complaint against them on the following grounds: (1) Plaintiffs' Complaint fails to state a claim upon which relief can be granted; (2) they are entitled to qualified immunity; (3) they are not liable for the actions of third party; and (4) under the theory of respondeat superior, they are not liable under 42 U.S.C. § 1983. Having reviewed the motion, the memoranda in support and in opposition, the applicable law, and being fully apprised of the circumstances, the Court finds that the motions are not well taken and will be DENIED.

## I. Standard of Review

In ruling on a motion to dismiss, the court must accept the factual allegations of the complaint as true. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969); *Liebson v. New Mexico Corrections Dep't*, 73 F.3d 274, 275 (10th Cir. 1996). The court may dismiss only if it is clear that plaintiff cannot prove any facts entitling her to relief, or that the court could not grant relief under any set of facts plaintiff could prove consistent with her allegations. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984); *Buckley Constr. Inc. v. Shawnee Civic & Cultural Dev. Auth.*, 933 F.2d 853, 855 (10th Cir. 1991). The court construes the facts, and the reasonable inferences that might be drawn from them, in favor of the plaintiff. *Beard v. City Northglenn, Colo.*, 24 F.3d 110, 115 (10th Cir. 1994).

## II. Factual Background

On June 27, 1996, Plaintiff Tricarico filed a Petition for Order Prohibiting Domestic Violence in Chaves County, alleging Larry Nease, her estranged husband, had threatened to take the children and leave the state. On July 3, 1996, the Fifth Judicial District Court of Chaves

2

County entered an Order Prohibiting Domestic Violence and awarding temporary legal and physical custody of the children to Plaintiff Tricarico. On September 3, 1996, the Chaves County District Court in New Mexico entered a Final Decree for Dissolution of Marriage, dissolving the marital union between Plaintiff Tricarico and Mr. Nease. Plaintiff Tricarico and Mr. Nease have three minor children, Desiree, Devon and Tyler, ages 10, 8, and 7, respectively. The Final Decree provided for joint custody of the minor children subject to the provisions of the Marital Settlement Agreement and the Parenting Plan. Pursuant to the Parenting Plan, Mr. Nease was responsible for the children on the first, third, and fifth weekend of the month from 5:00 p.m on Friday to 5:00 p.m. on Sunday. Additionally, Mr. Nease was responsible for the children on the last three days of spring break, all weekends during the Christmas school break, and from June 18 to July 2. The parties also agreed to alternate holidays.

Plaintiff Tricarico was responsible for the children at all times not specified as visitations periods for Mr. Nease. Despite the Parenting Plan, Mr. Nease' contact with the children had been sporadic since the divorce. On October 29, 1998, Plaintiff Tricarico filed her second Petition for Order Prohibiting Domestic Violence, alleging Mr. Nease had entered her home uninvited, slapped and shoved her down and hit her boyfriend with a metal object all in the presence of two of the children. On November 2, 1998, an Order Prohibiting Domestic Violence was entered in the Fifth Judicial District Court, awarding temporary and legal custody of the children to Plaintiff Tricarico. On July 15, 1999, Plaintiff Tricarico filed a third Petition for Order Prohibiting Domestic Violence in Chaves County, alleging Mr. Nease had choked her brother and shoved her while threatening, "I'll kill you bitch, get out of my way." On that occasion, Mr. Nease also prevented Plaintiff Tricarico from getting into her car and threatened to kill her if she contacted

3

the police.

During the summer of 1999, while the children were visiting Mr. Nease, Desiree, then 7 years of age, alleged that Joseph Borman had sexually abused her. Mr. Borman was a neighbor of Plaintiff Tricarico and also employed by Plaintiff Tricarico's uncle. On July 4, 1999, while picking up her children from Mr. Nease, Plaintiff Tricarico learned of the allegations of sexual abuse by Joseph Borman. Two Chaves County Deputy Sheriffs were present at the exchange of the children. Plaintiff Tricarico informed those present that she was having a barbeque at her home that night and Mr.Borman would be present. Plaintiff Tricarico asked for guidance in this matter. Mr. Nease instructed her to "keep this under her hat" until the investigation was completed. The two deputies nodded their heads in agreement with Mr. Nease's directive.

Plaintiff Tricarico took her children home and proceeded with her plans and kept sight of her children at all times during the barbeque. Plaintiff Tricarico cooperated with the Chaves County Sheriff's Department investigation. On July 6, 1999, at the request of the Sheriff's Department, Plaintiff Tricarico contacted Mr. Borman. On July 13, 1999, Desiree informed Plaintiff Tricarico that Mr. Borman had not molested her. Desiree further told her mother that Mr. Nease had instructed her to make the false allegations against Mr. Borman. Plaintiff Tricarico immediately called Defendant Berry to report the information Desiree had provided. In response, Defendant Berry threatened to take custody of Plaintiff Tricarico's children because she continued to live next door to Mr. Borman and was thus not protecting them.

Because of Defendant Berry's threats, Plaintiff Tricarico immediately arranged with a friend for the care of her children until she could move or her neighbor could move. Defendant Berry called Plaintiff Tricarico that night and directed her to appear at the Chaves County

Sheriff's Department at 8:00 a.m. the following morning. Defendant Berry also instructed Plaintiff Tricarico not to have contact with the children who were in the custody of her friend.

On July 16, 1999, Plaintiff Tricarico appeared at the Chaves County Sheriff's Department.[1] At that time, Defendant Berry threatened to arrest her for not protecting her children. Defendant Berry also told Plaintiff Tricarico that she knew what kind of family Plaintiff Tricarico came from. Plaintiff Tricarico also met with Defendant Barerra of the New Mexico Children, Youth and Families Department (CYF) and disclosed all the information concerning the family's circumstances. The CYF declined to take custody of the children. Defendant Berry delivered the children to Mr. Nease, claiming she was doing so until the children were safe. Defendant Berry also threatened to take custody of Plaintiff Tricarico's oldest child who had a different father. Defendant Barrera and John Does H-Z did nothing to prevent Defendant Berry's transfer of the children to Mr. Nease even though they had knowledge of alleged abuse and domestic violence by Mr. Nease.

Plaintiff Tricarico contends Defendant Berry had no legal authority to transfer custody of the children to Mr. Nease and claims Defendant Berry did so with full knowledge of Mr. Nease's history of domestic violence. Plaintiff Tricarico contends she was not given notice or an opportunity to be heard prior to the children being removed by Defendant Berry.

On July 19, 1999, Commissioner Mike Stone awarded temporary legal and physical

---

[1] In their Complaint, Plaintiffs allege Defendant Berry transferred custody to Mr. Nease on July 5, 1999. Compl.¶ 37. However, this is obviously incorrect since Plaintiffs allege that on July 13, 1999, Desiree recanted her claim that Joseph Borman sexually molested her. This event occurred prior to Defendant Berry transferring custody of the children to Mr. Nease. Compl. ¶ 32. The CYF Defendants claim Defendant Berry transferred custody to Mr. Nease on July 16, 1999. Mem. in Supp. of Mot. to Dismiss at 3.

5

custody of the children to Mr. Nease.  On August 9, 1999, Commissioner Stone ordered that Plaintiff Tricarico be allowed daily telephone visitation with the children, excluding Saturdays, and allowed her to take the children to school daily.  Commissioner Stone also ordered Mr. Nease to complete parenting classes.

On August 25, 1999, Plaintiff Tricarico picked up the children to take them to school when she noticed welts and bruising on the upper thighs of Devon.  Devon told his mother that Mr. Nease had spanked him with a belt.  Desiree confirmed this information.  Plaintiff Tricarico immediately contacted school officials and CYF.  Plaintiff Tricarico's counsel immediately notified Wihela Mendoza, the Court Appointed Special Advocate, of the situation and referrals.  On that day, the Sheriff's Department served notice upon Plaintiff Tricarico that CYF had taken custody of the children.  Plaintiff Tricarico contends she was the sole support of the children, complied with every request made by the Court and law enforcement and took all appropriate steps to protect herself and the children.

Subsequently, Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, alleging Defendants violated their due process rights under the Fourteenth Amendment.  Specifically, Plaintiffs assert Defendants Berry, Jennings, Barerra and John Does A-Z violated their constitutional rights by improperly removing Plaintiffs Tyler, Devon and Desiree from Plaintiff Tricarico, their custodial parent, and placing them in the custody of Mr. Nease, their abusive father, without notice or a hearing.  In addition, Plaintiffs contend that after the transfer of custody Defendants failed to protect them from their abusive father which resulted in injury to them. Therefore, Plaintiffs' Complaint alleges both substantive and procedural due process claims under the Fourteenth Amendment.  Plaintiffs further contend Defendants Berry, Jennings, and John Does A-H acted out

6

of personal animus for Plaintiff Tricarico and their acts were done maliciously, intentionally, and with wanton and willful disregard for their constitutional rights.

As to Defendants Berry, Barerra and John Does H-Z, Plaintiffs claim these Defendants actions are the proximate cause of Devon's personal injuries, welts, bruising, and emotional distress. John Does H-Z are administrative supervisors of the CYF and according to Plaintiffs failed to train, instruct, supervise and discipline Defendant Barerra which resulted in Plaintiffs' damages. Plaintiff claims that Defendant Jennings, as Sheriff for Chaves County and as commanding officer of Defendant Berry and John Does A-G, is liable for failure to train, instruct, supervise and discipline Defendant Berry and John Does A-G. Plaintiffs assert Defendant Jennings had received complaints regarding Defendant Berry's conduct and was also aware of past complaints and disciplinary infractions of Defendant Berry and should have known Defendant Berry's conduct posed "a pervasive and reasonable risk of harm" to the citizens of Chaves County.

For their cause of action against Defendant Chaves County, Plaintiffs claim Defendants Berry, Jennings and John Does A-G were acting pursuant to "either an official policy or the practice, custom and usage of Chaves County and its Sheriff's Department."

### III. Discussion

**Qualified Immunity**

Qualified immunity protects government officials from individual liability in a § 1983 action unless the officials violated clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When a defendant pleads qualified immunity, the plaintiff must then make a two-part showing. *Albright v. Rodriguez*, 51 F.3d 1531, 1534 (10th Cir. 1995). The

plaintiff must first demonstrate that the defendant's actions violated a constitutional or statutory right. *Id.* The plaintiff must then show that the constitutional or statutory rights the defendant allegedly violated were clearly established at the time of the conduct at issue. *Id.* In determining whether the right was clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). The action alleged to have violated a right does not have to have previously been held unlawful, however, "in light of pre-existing law the unlawfulness must be apparent." *Id.* "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Medina v. City and County of Denver*, 960 F.2d 1493, 1498 (10th Cir. 1992).

**Constitutional Violation**

"Once a defendant raises the defense of qualified immunity in the context of a motion to dismiss, a court must first determine whether the plaintiff has asserted a violation of federal law." *Currier v. Doran*, 242 F.3d 905, 919 (10th Cir. 2001), *cert. denied*, 70 U.S.L.W. 3163 (U.S. Nov. 13, 2001)(No. 01-382), and *cert. denied*, 70 U.S.L.W. 3270 (U.S. Nov. 13, 2001)(No. 01-551). In this case, Plaintiffs allege a violation of their procedural and substantive due process rights under the Fourteenth Amendment right when Defendants unlawfully removed Tyler, Devon and Desiree from the custody of their mother and placed them in the custody of their allegedly abusive father where they suffered injury.

**Procedural Due Process Violation**

Under the Due Process Clause of the Fourteenth Amendment, "[p]arents have a

8

fundamental liberty interest in the 'care, custody, and management' of their children." *Hollingsworth v. Hill*, 110 F.3d 733, 738 (10th Cir. 1997)(quoting *Santosky v. Kramer,* 455 U.S. 745, 753 (1982)). "The state may not deprive a person of her liberty interest without providing a fair procedure for the deprivation." *Id.* at 739. The Fourteenth Amendment protects a parent's liberty interest in the custody of her children and that interest is a constitutionally protected liberty interest which cannot be deprived without due process. *Id.* Before an officer removes children from the custody of their parents predeprivation notice and a hearing is required "'except for extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event.'" *Id.* (quoting *Spielman v. Hildebrand*, 873 F.2d 1377, 1385(10th Cir. 1989)). Therefore, "the state's interest in the health and welfare of its children constrains a parent's liberty interest in the custody, care, and management of her children." *Id.* "[I]n emergency circumstances which pose an immediate threat to the safety of a child, officials may temporarily deprive a parent of custody without parental consent or a court order." *Id.*

Defendant Berry claims that pursuant to N.M.Stat.Ann. § 32A-3B-3 she had authority to take the children into protective custody without a court order because she had reasonable grounds to believe that the children were endangered by their surroundings and removal from those surroundings was necessary to ensure the children's safety. Section 32A-3B-3 states in pertinent part:

> A  A child may be taken into protective custody by a law enforcement officer without a court order when the officer has reasonable grounds to believe that:
>
> (4)  the child is endangered by his surroundings and removal from those

surroundings is necessary to ensure the child's safety.

N.M.Stat.Ann. § 32A-3B-3A(4). However, § 32A-3B-3 does not apply to this case. *See* § 32A-3B-2 (outlining circumstances that must exist for §32A-3B-3 to apply). Nonetheless, New Mexico's Abuse and Neglect Act, N.M.Stat.Ann. § 32A-4-1 *et seq.* (the Act) provides a procedure consistent with the requirements of procedural due process for removing children from their home when they are in danger. The Act balances the State's interest in the safety of children against a parent's liberty interest in the custody of his or her children. Under § 32A-4-6A(1) of the Act, Defendant Berry had authority to take the children into custody and deliver them to the CYF. Section 32A-4-6A(1) provides as follows:

> A. A child may be held or taken into custody:
>
> (1) by a law enforcement officer when the officer has reasonable grounds to believe that the child . . . is in danger from the child's surroundings and removal from those surroundings is necessary.

Section 32A-4-7 outlines the procedures a law enforcement officer must follow after a child is taken into custody. Under § 32A-4-7

> A. A person (law enforcement or medical personnel) taking a child into custody **shall**, with all reasonable speed:
>
> (1) release the child to the child's parent, guardian or custodian and issue verbal counsel or warning as may be appropriate; or
>
> (2) **deliver the child to the department** or to an appropriate shelter-care facility or, in the case of a child who is believed to be suffering from a serious physical or mental condition or illness that requires prompt treatment or diagnosis, deliver the child to a medical facility. If a law enforcement officer delivers a child to a shelter-care facility or a medical facility, the officer shall immediately notify the department that the child has been placed in the department's custody.

N.M.Stat.Ann. § 32A-4-7A(1) & (2)(emphasis added). In this case, Plaintiff alleges the CYF declined to take custody of the children.[2] The Court construes this to mean that Defendant Berry delivered the children to the CYF. Under those circumstances, § 32A-4-7B directs the CYF to "review the need for placing the child in custody and shall release the child from custody unless custody is appropriate . . . ." Once the CYF declined to take custody of the children, §32A-4-7B mandates the CYF release them to the parent. Moreover, under § 32A-4-7C, "[i]f a child is placed in the custody of the department and is not released to the child's parent, guardian or custodian, the department shall give written notice thereof as soon as possible, and in no case later than twenty-four hours, to the child's parent, guardian or custodian together with a statement of the reason for taking the child into custody." *See also,* N.M.Stat.Ann. § 32A-4-18 (setting out requirements for custody hearings).

Accepting the factual allegations of Plaintiff's Complaint as true, the Court finds that Defendant Berry was authorized under the Act to take custody of the Nease children and deliver them to the CYF. However, once the CYF declined custody, the Act mandates the CYF return the children to Plaintiff Tricarico. The right to procedural due process before depriving a parent of her liberty interest in the custody of her children was clearly established at the time of Defendant Berry's actions. In light of the circumstances, it was unreasonable for Defendant Berry to believe she had authority to transfer custody from Plaintiff to Mr. Nease after the CYF had

---

[2] Although the CYF Defendants claim they were not involved at this point, Plaintiffs allege CYF declined to take custody of the children. In a motion to dismiss, the Court must accept the factual allegations of the Complaint as true. Moreover, even under CYF Defendants' version of the facts, if CYF was not involved, the Act required Defendant Berry to "release the child to the child's parent, guardian or custodian and issue verbal counsel or warning as may be appropriate." N.M.Stat.Ann. § 32A-4-7A(1).

declined custody. Accordingly, the Court finds Plaintiffs have alleged sufficient facts establishing that Defendant Berry violated their procedural due process right under the Fourteenth Amendment. Thus, Defendant Berry is not entitled to qualified immunity. In addition, Plaintiffs have alleged sufficient facts establishing Defendant Barrerra failed in her statutory duty to return the children to Plaintiff Tricarico's custody and violated Plaintiffs' Fourteenth Amendment rights by not doing so.

**Substantive Due Process Violation**

Next, County and CYF Defendants contend Plaintiffs' claims are precluded by *DeShaney v. Winnebago County Department of Social Services,* 489 U.S. 189 (1989). In *DeShaney*, the Supreme Court held that "nothing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors." *Id.* at 195. Although, state actors generally are liable only for their own acts, and not the violent acts of third parties, there are two exceptions to this rule, the "special relationship doctrine"and the "danger creation" theory. *Armijo v. Wagon Mound Public Schools*, 159 F.3d 1253, 1260 (10th Cir. 1998). The special relationship doctrine "exists when the state assumes control over an individual sufficient to trigger an affirmative duty to provide protection to that individual," and the danger creation theory provides that a state may also be liable for an individual's safety "if it created the danger that harmed the individual." *Id.* (citing *Uhlrig v. Harder*, 64 F.3d 567, 572 (10th Cir. 1995)).

However, "[w]hen the state affirmatively acts to remove a child from the custody of one parent and then places the child with another parent, *DeShaney* does not foreclose constitutional liability." *Currier*, 242 F.3d at 919. Therefore, *DeShaney* does not preclude Plaintiffs' claims

under the danger creation theory.[3] In order to make a danger creation claim, a plaintiff must demonstrate the following:

(1) the charged state entity and the charged individual actors created the danger or increased plaintiff's vulnerability to the danger in some way;

(2) plaintiff was a member of a limited and specifically definable group;

(3) defendants' conduct put plaintiff at substantial risk of serious, immediate, and proximate harm;

(4) the risk was obvious or known;

(5) defendants acted recklessly in conscious disregard of that risk; and

(6) such conduct, when viewed in total, is conscience shocking.

*Currier*, 242 F.3d at 918. Moreover, "the danger creation theory . . . focuses on the affirmative actions of the state in placing the plaintiffs in harm's way." *Id.* at 919. Plaintiffs cannot rely on Defendants' failure to intervene once custody was transferred to their father to state a danger creation claim if the Defendants' affirmative conduct in placing the children with their father does not satisfy the danger creation requirements. *Id.* The Court must determine whether Plaintiffs have pleaded sufficient facts to state a cause of action under the danger creation theory.

As noted above, Defendant Berry unlawfully transferred custody of the children from their mother to their abusive father. Defendant Barrera also failed in her statutory duty to release the children to their mother once the CYF declined custody. Subsequently, based on Defendant

---

[3] Plaintiffs contend they have stated a cause of action under the special relationship doctrine because "the state actors were in a previous close relationship with them and were aware of all acts and allegations" when they "affirmatively took custody of and placed the children." Pls.' Resp. to CYA's Mot. to Dismiss at 4. The Court disagrees. The Tenth Circuit has held that "a plaintiff must show involuntary restraint by the government official in order to establish a duty to protect under the special relationship theory." *Armijo*, 159 F.3d at 1261. Plaintiffs failed to make this showing.

Berry's transfer of custody from Plaintiff Tricarico to Mr. Nease, on July 19, 1999, Commissioner Stone awarded temporary legal and physical custody of the minor children to Mr. Nease.

Plaintiffs contend "Defendant Barrera and John Does H-Z, inclusive, did nothing to prohibit Berry's transfer of Plaintiffs Tyler, Devon and Tyler (sic) to Larry Nease despite CYFD's knowledge of alleged abuse and domestic violence by Larry Nease." Compl. ¶ 42. Defendant Barrera does not dispute this allegation and admits she was present when Defendant Berry notified Plaintiff Tricarico that Defendant Berry was taking the three children from her custody because of safety concerns and placing them with their father. CYF's Mem. in Supp. of Mot. to Dismiss at 3-4. At that time, Defendant Barrera claims she informed Defendant Berry that a child abuse referral had been made on Mr. Nease regarding his children and that CYF had not yet conducted an investigation into these allegations. CYF's Mem. in Supp. of Mot. to Dismiss at 4. Although Defendants Berry and Barerra are alleged to have known about Mr. Nease's financial irresponsibility, his acts of domestic violence and abuse, nonetheless, Defendant Berry, without objection by Defendant Barrera, placed the children in Mr. Nease's custody. Accordingly, Plaintiffs contend Defendants Berry and Barrera created the danger or increased the children's vulnerability to the danger and acted in conscious disregard of that risk. These allegations possibly could be conscience shocking depending on further context as provided by discovery. *See Armi*jo, 159 F.3d at 1264; *Currier,* 242 F.3d at 920. Based on these allegations, the Court finds that Plaintiffs have pleaded sufficient facts to state a cause of action under the danger creation theory as to Defendants Berry and Barrera.

Plaintiffs also claims Defendant Jennings is liable for "failure to train, supervise and discipline" Defendant Berry and John Does A-G. Plaintiffs assert Defendant Jennings had

14

received complaints regarding Defendant Berry's conduct and was also aware of past complaints and disciplinary infractions of Defendant Berry and should have known Defendant Berry's conduct posed "a pervasive and reasonable risk of harm" to the citizens of Chaves County.

Plaintiffs further claim Defendant County, "acting under color of law, by and through the policy makers of Chaves County, intentionally, knowingly, recklessly or with deliberate indifference to the rights of the inhabitants of Chaves County, failed to instruct, supervise, control and or discipline on a continuing basis Defendants Berry, Jennings and John Does A-G in the performance of their duties." Compl. ¶ 92. Plaintiffs further allege Defendants Berry, Jennings and John Does A-G: (1) unlawfully harassed, intimidated, and threatened Plaintiffs and/or citizens during the investigation of criminal matters; (2) willfully and maliciously interfered with the lawful custodial relationships of Plaintiffs and/or citizens; and (3) willfully and maliciously placed Plaintiff children in dangerous and unsafe environments thereby resulting in personal injury to children. Compl. ¶ 92. Plaintiffs allege Defendant County knew or should have known that these wrongs were being committed. Compl. ¶ 93. Finally, Plaintiffs claim Defendant County directly or indirectly approved or ratified the unlawful conduct of Defendants Berry, Jennings and John Does A-G. Compl. ¶ 94.

As to Defendants John Does H-Z, the administrative supervisors of the CYF, Plaintiffs alleges they failed to train, instruct, supervise and discipline Defendant Barerra and other CYF caseworkers and this failure was the direct and proximate cause of Plaintiffs' injuries. Moreover, Plaintiffs claim Defendants Does H-Z's failure to "train, instruct, supervise and discipline" amounted to deliberate indifference. Compl. ¶¶ 79, 80.

A supervisor is not liable under § 1983 unless plaintiff can demonstrate an affirmative link

between the supervisor's conduct, his exercise of control or direction, or his failure to supervise and the constitutional deprivation. *Meade v. Grubbs*, 841 F.2d 1512, 1527 (10th Cir. 1988). Moreover, "[a] supervisor or municipality may be held liable where there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable." *Id.* at 1528; *Currier*, 242 F.3d at 923. In addition, the supervisor's conduct must shock the conscience. *Currier*, 242 F.3d at 923.

In this case, Plaintiffs claim Defendant Jennings had knowledge of Defendant Berry's past misconduct and the risk it posed to the rights of others. Additionally, Plaintiffs claim Defendant County also knew or should have known that these unlawful acts were happening. In *Currier*, the Court of Appeals found that because the supervisor had knowledge that subordinates were depriving young children of their constitutional rights, the supervisor's failure to correct the offending conduct amounted to deliberate indifference to the rights of the plaintiffs and therefore could be conscience shocking, depending "on context as provided by discovery." *Id., see also, Radecki v. Barela*, 146 F.3d 1227, 1232 (10th Cir. 1998)("Where the state actor has the luxury to truly deliberate about the decision he or she is making, something less than unjustifiable intent to harm, such as calculated indifference, may suffice to shock the conscience.") Similarly, Plaintiffs allege Defendants Jennings and County failed to correct Defendant Berry's offending conduct and this amounted to deliberate indifference to the rights of Plaintiffs and the citizens of Defendant County. Accordingly, the Court finds Plaintiffs have alleged a constitutional deprivation against Defendant Jennings, Defendants A-G, and Defendant County. Plaintiffs also have alleged a constitutional deprivation, at this juncture, by John Does H-Z for failure to train and supervise Defendant Barrera.

Finally, the Court finds that the law was clearly defined at the time of Defendants' action in 1999 that reasonable state officials would have known that their behavior of unlawfully transferring custody of children from a custodial parent to an allegedly abusive noncustodial parent which placed the children at substantial risk of serious, immediate, and proximate harm was unconstitutional. Therefore, the Court finds that the motions to dismiss should be denied.

**NOW, THEREFORE,**

**IT IS HEREBY ORDERED** that County Defendants' Motion to Dismiss is DENIED.

**IT IS FURTHER ORDERED** that Defendant Rebecca Barerra and John Does H-Z's Motion to Dismiss Counts II, IV and V of Plaintiffs' Complaint is also DENIED.

**JOE H. GALVAN**
**UNITED STATES MAGISTRATE JUDGE**